UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PASQUALE VERRILLI,

                                  **Plaintiff,**

                            v.                                   1:09-CV-837
                                                                     (FJS/RFT)

CORRECTION OFFICER BRIAN W.
WINCHELL, SERGEANT TIMOTHY C.
KINGSLEY, and SEVERAL UNKNOWN
CORRECTION OFFICERS,

                                  **Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **SUNDACK & ASSOCIATES, LLC**<br>19 Court Street, Third Floor<br>White Plains, New York 10601<br>Attorneys for Plaintiff | **TRACIE A. SUNDACK, ESQ.** |
| **OFFICE OF THE NEW YORK<br>STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants | **AARON M. BALDWIN, AAG** |

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On July 22, 2009, Plaintiff, an inmate incarcerated at Great Meadow Correctional Facility ("Great Meadow"), brought this action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his civil rights under the Eighth Amendment to the United States Constitution. Currently pending before the Court is Defendants' motion for summary judgment.

## II. BACKGROUND[1]

On July 26, 2008, a fellow inmate assaulted Plaintiff while he was incarcerated at Great Meadow. As a result of the assault, Plaintiff suffered severe injuries.

Following the assault, Plaintiff was removed from the facility until July 31, 2008. Upon his return, Plaintiff was placed in isolation. On August 8, 2008, Plaintiff filed an appeal of the facility's disciplinary finding.

On August 18, 2008, Plaintiff was again removed from the facility for additional medical treatment and did not return to Great Meadow until August 31, 2008. On the day following Plaintiff's return to Great Meadow, he was placed into general population; and, on September 15, 2008, Plaintiff attempted to file a grievance. Great Meadow's Inmate Grievance Resolution Committee ("IGRC") rejected the grievance as untimely.

On November 11, 2009, Defendants filed the present motion for summary judgment. Defendants assert that the Court must dismiss Plaintiff's complaint because he failed to exhaust administrative remedies.

## III. DISCUSSION

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging the conditions of his confinement. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). This exhaustion requirement applies to all prison-condition claims, including federal civil rights cases. *See Woodford*, 548 U.S. at 85 (citation omitted); *Porter*, 534 U.S. at 524 (citations omitted).

---

[1] Unless otherwise noted, the parties do not contest the facts.

Exhaustion for an inmate in New York State Department of Correction's ("DOCS") custody is generally achieved through the inmate grievance program ("IGP"). *See* N.Y. Comp. Codes. R. & Regs. tit. 7, § 701.1 *et seq.* (2001). The IGP establishes a twenty-one day limitations period for inmates to grieve an alleged incident, although they may file an application to toll the filing deadline. *See id.* at §§ 701.7(a)(1), 701.6(g). The IGP is composed of three tiers: (1) an inmate files a grievance, which the Inmate Grievance Resolution Committee ("IGRC") reviews; (2) the inmate takes an appeal from the IGRC's adverse decision to the superintendent of the facility; and (3) the inmate takes an appeal from the superintendent's adverse decision to the Central Office Review Committee ("CORC"). *See Hemphill v. New York*, 380 F.3d 680, 682 (2d Cir. 2004) (discussing the IGP process).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "'certain caveats apply.'" *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (quoting *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)) (other citation omitted). When an inmate fails to follow the IGP, a court must conduct a three-part inquiry to determine if such failure is fatal to his claims. *See id.* A court must consider whether

> (1) administrative remedies [we]re not available to the prisoner;
> (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or
> (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

*Id.* (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

In the present matter, it is clear that Plaintiff did not exhaust his administrative remedies. Contrary to Plaintiff's assertion, his untimely grievance, which the IGRC denied as untimely, does not satisfy the PLRA's exhaustion requirements. *See Pacheco v. Drown*, No. 9:06-CV-

0020, 2010 WL 144400, *20 (N.D.N.Y. Jan. 11, 2010) (quoting *Soto v. Belcher*, 339 F. Supp. 2d 592, 595 (S.D.N.Y. 2004)).  Accordingly, the Court must determine whether, pursuant to *Hemphill*, Plaintiff's failure to exhaust his administrative remedies bars his claim for relief.

**A.     Availability of administrative remedies**

The first step in the *Hemphill* inquiry requires a court to determine whether administrative remedies were available to the prisoner. *See Hemphill*, 380 F.3d at 686.  The test for assessing availability is an "objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Id.* at 688 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).  In making this determination, "courts 'should be careful to look at the applicable set of grievance procedures[.]'" *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004) (quotation omitted).  A court may consider exhaustion unavailable in situations where the plaintiff is unaware of the grievance procedures or did not understand them, *see Ruggiero*, 467 F.3d at 178, or where the defendants' behavior prevents him from seeking administrative remedies, *see Hemphill*, 380 F.3d at 686.[2]

Plaintiff attended orientation during his first week of incarceration at Great Meadow.  At orientation, a representative from IGP explained the grievance procedures and gave Plaintiff a packet with information regarding the grievance process. *See* Declaration of Brandi White dated November 3, 2009 ("White Decl."), at ¶ 8 and Exhibit "A."  A brochure that Plaintiff received

---

[2] The case law does not clearly distinguish between situations in which the defendants' behavior renders administrative remedies "unavailable" to the plaintiff and cases in which the defendants are estopped from asserting non-exhaustion as an affirmative defense because of their behavior. *See Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004) (citation omitted).  Therefore, there is some overlap in the analysis of these claims.

informs inmates that, "[i]f you are not sure if your issue is grievable, file it anyway to be safe. If it is not grievable you will be notified who/where to address your concern." *See id.* at Exhibit "A." The information provided clearly and succinctly explained the grievance process so as to make it available to a similarly situated individual of ordinary firmness.

Moreover, prior to this incident, Plaintiff had filed other grievances while at Great Meadow. *See id.* at Exhibits "C" and "D." Therefore, Plaintiff cannot now claim that he was unaware of or that he did not understand the grievance procedures.

Further, Plaintiff's argument that a failure-to-protect claim is not grievable under the regulations is simply without merit. *See* Plaintiff's Memorandum of Law at 6. Plaintiff cites to a New York City Department of Correction's regulation that specifically excludes assault as a grievable matter. *See id.* (citation omitted). However, Plaintiff has not brought an assault claim, but a failure to protect claim. Even more telling is the fact that the case law is replete with cases dismissing failure-to-protect claims on exhaustion grounds, thereby indicating that such claims are, in fact, grievable. *See, e.g., Price v. Engert*, 589 F. Supp. 2d 240, 247 (W.D.N.Y. 2008) (citation omitted); *McCray v. Smith*, No. 9:07-CV-415, 2009 WL 2762166, *3-*4 (N.D.N.Y. Aug. 25, 2009); *Colon v. Furlani*, No. 07-CV-6022L, 2008 WL 5000521, *1-*2 (W.D.N.Y. Nov. 19, 2008).

Finally, Plaintiff's argument that his injuries and placement in isolation upon return to Great Meadow rendered the grievance process unavailable is, at best, disingenuous. As discussed, Plaintiff had twenty-one days to file his grievance after the incident on July 26, 2008. Plaintiff returned to Great Meadow on July 31, 2008, and was able to attend a disciplinary hearing on August 7, 2008. *See* Plaintiff's Statement of Material Facts at ¶¶ 4, 11. On or about

August 8, 2008, Plaintiff wrote and filed an appeal in response to the disciplinary hearing judgment; the same time period in which Plaintiff claims that he was unable to file a grievance because of his injuries and placement in isolation. *See id.* Based on the foregoing, it is clear that Plaintiff's injuries and placement in isolation did not render the grievance process unavailable. *See McCray*, 2009 WL 2762166, at *3-*4 (holding that summary judgment on exhaustion grounds was appropriate notwithstanding the plaintiff's allegations that he was unable to file the grievance within the required time frame due to a lengthy recuperation from injury and his transfer to another facility).

Accordingly, the Court finds that the administrative remedies were available to Plaintiff.

### B.  Estoppel

A plaintiff attempting to estop a defendant from invoking the exhaustion defense must allege that the defendant took some affirmative action to prevent the plaintiff from using the otherwise available grievance procedures. *See Ruggiero*, 467 F.3d at 178. Some such affirmative actions include beating, denying grievance forms and writing implements, and threatening retaliation. *See id.* (citing *Ziemba* [*v. Wezner*, 366 F.3d 161,] 162 [(2d Cir. 2004)]).

Plaintiff asserts that, "[d]ue to decisions of various correctional employees, particularly the decision to isolate Plaintiff from family, other inmates and advisors, all of whom could have offered useful advice, insight and assistance to Plaintiff, defendants should be estopped from arguing non-exhaustion of remedies." *See* Plaintiff's Memorandum of Law at 8.

Plaintiff does not claim that Defendants denied him writing utensils or the requisite forms or that they threatened or beat him so as to render an otherwise available grievance procedure

unavailable. Moreover, as already discussed, although Plaintiff may have been in isolation, he was still able to file an appeal from his disciplinary hearing judgment during the time that he could have filed a timely grievance.

Accordingly, the Court finds that Plaintiff has alleged no facts warranting the application of estoppel.

### C.   Special circumstances

Plaintiff claims that there are special circumstances present that justify his failure to exhaust his administrative remedies. *See* Plaintiff's Memorandum of Law at 9. First, he claims that his disciplinary action appeal was sufficient "to provoke action on the part of correctional officials." *See id.* (citing *Johnson v. Testman*, 380 F.3d 691, 696-97 (2d Cir. 2004)). Plaintiff's reliance on *Johnson* is misplaced.

In *Johnson*, the Second Circuit "considered whether a prisoner could satisfy the PLRA's exhaustion requirement by raising his grievance in the BOP's disciplinary proceedings and appeals process." *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing [*Johnson*,] 380 F.3d at 694). The Second Circuit remanded so that the district court could determine

> (1) whether . . . the prisoner was justified in believing that his complaints in the disciplinary appeal *procedurally* exhausted his administrative remedies because the prison's remedial system was confusing, and (2) whether the prisoner's submissions in the

disciplinary appeals process exhausted his remedies "*in a substantive sense*" by "afford[ing] corrections officials time and opportunity to address complaints internally."

*Id.* (quoting *Johnson*, 380 F.3d at 696-98) (internal citation omitted).

As in *Macias*, Plaintiff does not assert that he "reasonably believed he had satisfied the PLRA's exhaustion requirement by filing tort claims and by complaining informally to prison

staff." *Id.* (footnote omitted). "Regardless of whether his tort claims or informal complaints put the prison officials on notice of his grievance '*in a substantive sense*,' *Johnson* makes clear that to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies." *Id.* (quoting *Johnson*, 380 F.3d at 697-98).

As *Macias* makes clear, notice of Plaintiff's complaints, through some other means, such as a disciplinary appeal, is insufficient to satisfy the exhaustion requirement. *See Withrow v. Taylor*, No. 9:05-CV-1129, 2007 WL 3274858, *10 (N.D.N.Y. Nov. 5, 2007) (citing *Macias v. Zenk*, 495 F.3d 37, 42-44 (2d Cir. 2007)). *Johnson* is particularly inapplicable here because the Court has already determined that the IGP procedures were available to Plaintiff.

Moreover, Plaintiff's untimely grievance does not serve to exhaust his administrative remedies. *See Macias*, 495 F.3d at 41 (citation omitted). Rejecting the argument that denial of a grievance as untimely implies exhaustion, the Supreme Court explained that compliance with procedural rules is critical because "[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction[.]" *Woodford*, 548 U.S. at 95. Accordingly, Plaintiff's untimely grievance does not constitute a special circumstance.

Plaintiff further argues that "the general absurdity of grieving an assault" is a special circumstance, excusing his failure to exhaust. *See* Plaintiff's Memorandum of Law at 9. This contention warrants little discussion. First, Plaintiff is not "grieving an assault," but a failure to protect. Second, contrary to Plaintiff's insinuation, the sole purpose of the PLRA is not simply to provide sufficient notice to prison officials and allow them time to redress situations before a lawsuit is filed. *See id.* at 9-10. As the Second Circuit has stated, "the purpose of the PLRA . . .

was plainly to curtail what Congress perceived to be inmate abuses of the judicial process." *Ortiz v. McBride*, 380 F.3d 649, 658 (2d Cir. 2004) (citations omitted). Allowing Plaintiff, a prisoner proven to be familiar with the grievance procedures, to proceed with this action, in the absence of any unique circumstances, would clearly run afoul of the PLRA's purposes.

Accordingly, the Court the Court finds that there are no special circumstances that justify Plaintiff's failure to exhaust his administrative remedies.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: September 29, 2010
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge